JOSEPH M. KISIAH, Employee, Plaintiff v. W.R. KISIAH PLUMBING, INCORPORATED, Employer; SELF-INSURED, (Consolidated Administrators), Carrier, Defendant

No. COA95-878

(Filed 15 October 1996)

**1. Workers' Compensation § 420 (NCI4th)— disability compensation—defendant's unilateral modification**

The issue of plaintiff's disability compensation was remanded to the Industrial Commission for rehearing where plaintiff was injured at a work site; a Form 21 Agreement was entered into by plaintiff and defendant and approved by the Industrial

Commission; plaintiff received temporary total disability payments and undertook treatment; he returned to work on 6 January 1993 on a part-time basis in a different capacity earning less; defendant discontinued payment of disability compensation beginning 6 January 1993, despite having received no approval to do so by the Commission; plaintiff was fired because he refused to discuss a pending lawsuit related to the injury; defendant unilaterally mailed plaintiff a check in April which ostensibly represented an amount the employer-defendant deemed proper as payment for temporary partial disability; after the lump sum payment, defendant began paying plaintiff a sum it decided was appropriate as temporary partial disability; and the full Commission concluded that plaintiff failed to establish that he continued after 6 January to suffer a loss of wage earning capacity, that plaintiff had the burden of proving disability and its extent, that plaintiff was not entitled to benefits, and that defendant was entitled to a credit for all temporary partial disability paid after 6 January 1993. A Form 21 agreement has long been regarded as constituting an award by the Commission and a presumption of disability exists to the benefit of the employee whenever a disability award is made by the Commission. Challenges to an award must thereafter be made pursuant to the processes mandated by the Act.

**Am Jur 2d, Workers' Compensation § 431.**

**Tort liability of worker's compensation insurer for wrongful delay or refusal to make payments when due. 8 ALR4th 902.**

2. **Workers' Compensation § 290 (NCI4th)— disability— employer's unilateral modification of benefits—credits for payments**

It was improper for the Industrial Commission to conclude that credit should be given to defendant for disability payments made to plaintiff after defendant unilaterally and therefore improperly determined that plaintiff's return to work modified a Form 21 agreement. Credits should be given only if they were not due and payable when made and plaintiff was presumptively due payments pursuant to the Form 21 agreement until a contrary determination was made be the Commission.

**Am Jur 2d, Workers' Compensation §§ 416, 545.**

**Tort liability of worker's compensation insurer for wrongful delay or refusal to make payments when due. 8 ALR4th 902.**

3. **Workers' Compensation § 301 (NCI4th)— disability— unilateral modification—penalty**

The Industrial Commission erred by determining that no basis existed upon which to assess a penalty against defendant where defendant voluntarily ceased making disability payments without the permission of the Commission, then decided to resume payments at a level it deemed proper. This is the exact behavior N.C.G.S. § 97-18 was enacted to prevent.

**Am Jur 2d, Workers' Compensation §§ 226, 480, 684.**

**Tort liability of worker's compensation insurer for wrongful delay or refusal to make payments when due. 8 ALR4th 902.**

Appeal by plaintiff from opinion and award entered 29 April 1995 by the Full Commission. Heard in the Court of Appeals 27 March 1996.

*Waggoner, Hamrick, Hasty, Monteith and Kratt, P.L.L.C., by S. Dean Hamrick, for plaintiff appellant.*

*Teague, Rotenstreich and Stanaland, L.L.P., by Laurie R. Stegall, for defendant appellee.*

SMITH, Judge.

Plaintiff appeals from the opinion and award of the Full Commission, whereby the Full Commission, *inter alia*, concluded that plaintiff failed to prove continuing entitlement to either temporary total or partial disability payments after 6 January 1993, and that defendant was entitled to a credit for all temporary partial disability benefits paid plaintiff after 6 January 1993. Due to the Full Commission's (Commission) failure to apply the proper presumption of disability in favor of plaintiff, we reverse.

The facts necessary to resolution of this case are as follows. Plaintiff Joseph M. Kisiah, a construction worker, was burned by scalding water while attempting to turn off a valve attached to a ruptured pipe at a work site in Charlotte, North Carolina. Pursuant to this injury, a Form 21 Agreement was entered into by plaintiff and

KISIAH v. W.R. KISIAH PLUMBING

[124 N.C. App. 72 (1996)]

defendant, and approved by the Industrial Commission. The Form 21 Agreement stated "[t]hat said employee sustained an injury by accident arising out of and in the course of said employment on the following date: 4/27/92."

Thereafter, plaintiff began to receive temporary total disability payments. Plaintiff undertook treatment for first- and second-degree burns to his legs and feet, and treatment for "diagnosed post-traumatic and abductor tendinitis due to deep partial thickness scalding burns of both legs." Following this treatment and a rehabilitative regimen, plaintiff was released for light duty work by his physician.

On 6 January 1993, plaintiff returned to work on a part-time basis for defendant, not in his former capacity as a construction superintendent at a weekly wage of $582.96, but as a shop foreman earning $10.00 an hour. At the start of plaintiff's third week back at work, at which time he was scheduled to begin full-time duties, he was fired by defendant. Plaintiff was fired because he refused to discuss a pending lawsuit related to the instant injury with defendant. Beginning 6 January 1993, defendant discontinued payment of disability compensation to plaintiff, despite having received no approval to do so by the Commission.

Plaintiff, on 2 February 1993, filed a Form 33 request for a hearing before the Commission. Plaintiff's Form 33 request alleged that defendant had "terminated all compensation payments without securing Industrial Commission approval." On or about 20 April 1993, defendant unilaterally mailed plaintiff a check in the amount of $3,462.97. This payment ostensibly represented an amount the employer-defendant deemed proper as payment for temporary partial disability compensation. According to defendant, the $3,462.97 check was intended to serve as a temporary partial disability payment for the period during which defendant had ceased all payments to plaintiff; after this lump sum payment, defendant began paying plaintiff a sum it decided was appropriate as "temporary partial disability."

On 24 May 1993, defendant submitted a Form 33R response admitting termination of benefits and noting plaintiff "ha[d] received all compensation to which he was entitled." Defendant's unilateral change in compensation to plaintiff was never approved by the Commission. After a hearing before the Deputy Commissioner of the Industrial Commission, plaintiff appealed to the Full Commission. The Full Commission's opinion and award included the following conclusions of law:

KISIAH v. W.R. KISIAH PLUMBING

[124 N.C. App. 72 (1996)]

1. *Plaintiff returned to work for defendant and the presumption of disability ended.* After he was terminated by defendant, he failed to make any effort to look for employment suitable to his capacity, given his very limited work restriction regarding safety shoes. By failing to look for suitable employment, plaintiff failed to establish that he continued after 6 January 1993 to suffer a loss of wage earning capacity as a result of the injury of 27 April 1992. See <u>Russell</u> v. <u>Lowes</u>, 108 N.C. App. 762 (1993). *It is well established that plaintiff has the burden of proving disability and its extent.* Therefore, plaintiff is not entitled to benefits under either G.S. §97-29 or G.S. §97-30 after 6 January 1993.

2. Pursuant to G.S. §97-42, defendant is entitled to a credit for all temporary partial disability benefits paid to plaintiff after 6 January 1993.

\* \* \* \*

5. There is *no basis* to assess attorney fees pursuant to G.S. §97-88.1 or other penalties.

(Emphasis added.) These conclusions of law are erroneous, and we address each, *in seriatim.*[1]

### I. The Form 21 Presumption of Disability

[1] At the onset, we note that, if findings of fact made by the Industrial Commission " 'are predicated on an erroneous view of the law or a misapplication of the law, they are not conclusive on appeal.' " *Radica v. Carolina Mills*, 113 N.C. App. 440, 446, 439 S.E.2d 185, 190 (1994) (quoting *Simon v. Triangle Materials, Inc.*, 106 N.C. App. 39, 41, 415 S.E.2d 105, 106 (1992)). The Full Commission's Conclusion of Law No. 1 contains at least two independent legal misapprehensions. First, under the facts of this case, the burden of proof was on the employer, not the employee, to demonstrate that plaintiff was no longer entitled to his disability award. Second, an employee's presumption of disability may not be defeated merely by a return to work.

---

1. The statutory law applicable to this case is that which was in effect at the time liability for temporary total disability was admitted by the employer, 19 May 1992. After this date plaintiff's claim was not "pending." *See* N.C. Gen. Stat. § 97-18.1 (Cum. Supp. 1995) (indicating amendments to the Workers' Compensation Act effective 1 October 1994 and/or 1 January 1995 applicable only to claims "pending on or filed" after these dates).

KISIAH v. W.R. KISIAH PLUMBING

[124 N.C. App. 72 (1996)]

This Court has repeatedly held that a Form 21 agreement (approved by the Commission) represents an admission of liability by the employer for disability compensation pursuant to the Workers' Compensation Act (the "Act"). *Dalton v. Anvil Knitwear*, 119 N.C. App. 275, 282-83, 458 S.E.2d 251, 256-57, *disc. review denied and cert. denied*, 341 N.C. 647, 462 S.E.2d 507 (1995); *see also Radica*, 113 N.C. App. at 447, 439 S.E.2d at 190 (Form 21 agreement is an admission by employer of liability, entitling employee to continuing presumption of disability). In this case a Form 21 was entered into by the parties and approved by the Commission. Once this Form 21 agreement was in place, a concomitant presumption of disability attached in favor of the employee. *Dalton*, 119 N.C. App. at 283-84, 458 S.E.2d at 257. The Form 21 presumption of disability is a rule of law at least 25 years old, *Watkins Central v. Motor Lines, Inc.*, 279 N.C. 132, 137-38, 181 S.E.2d 588, 592 (1971), and is the equivalent of proof that plaintiff is disabled. *Dalton*, 119 N.C. App. at 283-84, 458 S.E.2d at 257. After the presumption attached, "the burden shift[ed] to [the employer-defendant] to show that plaintiff is employable." *Id.* at 284, 458 S.E.2d at 257.

The instant Form 21 agreement " 'for the payment of compensation, [once] approved by the Commission, [was] as binding on the parties as an order, decision or award of the Commission unappealed from.' " *Id.* at 282, 458 S.E.2d at 257 (quoting *Brookover v. Borden*, 100 N.C. App. 754, 756, 398 S.E.2d 604, 606 (1990)). Once the Form 21 agreement was reached and approved, " 'no party . . . [could] thereafter be heard to deny the truth of the matters therein set forth . . . .' " *Dalton*, 119 N.C. App. at 282, 458 S.E.2d at 257 (citation omitted).

In its Conclusion of Law No. 1 the Commission incorrectly enunciates the burden of proof, and strips plaintiff of his Form 21 presumption of disability. Needless to say, proper placement of the presumption and the burden of proof in a change of (disability) condition situation, can be, and often is, outcome determinative. In fact, the instant matters pivot entirely on these two factors. Here, the Commission straightforwardly noted where it placed the burden of proof and why—as Conclusion of Law No. 1 speaks for itself: "Plaintiff returned to work for defendant and the presumption of disability ended. . . . *See Russell v. Lowes*, 108 N.C. App. 762, [425 S.E.2d 454] (1993). It is well established that *plaintiff has the burden* of proving disability and its extent. Therefore, plaintiff is *not entitled to benefits* under either G.S. § 97-29 [total incapacity] or G.S. § 97-30 [partial incapacity] *after 6 January 1993*." (Emphasis added.)

Defendant's argument runs much the same line. Citing I.C. Rule 404 (1996) (I.C. Rule or Rule) as authority, defendant argues that once "the plaintiff returned to work with the defendant-employer, the defendant-employer was entitled to suspend compensation without the requirement of a Form 24 [request to terminate benefits]." On the basis of Rule 404, defendant unilaterally cancelled its obligations to plaintiff under the existing Form 21 agreement, and the Commission agreed that defendant was entitled to do so.

Indeed, a facial reading of Rule 404 and *Russell* might lead an arbiter of law to conclude that a return to work reallocates the burden of proof upon challenge by an employer. Defendant's reallocation theory apparently originates from this Court's seemingly unqualified recitation of law in *Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457, to wit: "The burden *is on the employee to show* that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment." (Emphasis added.) I.C. Rule 404 appears to tack the same course; it instructs that "in cases where the award is to pay compensation during disability, there is a rebuttable presumption that disability continues *until the employee returns to work.*" (Emphasis added.) The underlying assumption of these statements, when viewed in isolation, is that a return to work exacts a transformative effect on the burdens of proof and entitlement to disability between the employer and disabled employee. Such an assumption is unfounded.

Pursuant to the above authority, the Commission approved defendant's self-asserted cancellation of plaintiff's benefits. The problem with the Commission's reliance on *Russell*, and defendant's corresponding Rule 404 argument, is that such actions misread the holding of *Russell*, and thereby overextend *Russell*'s intended perimeter. "*Russell* only addresses the burdens of the parties in the context of a hearing where there has been no previous determination that the employee is disabled." *Stone v. G & G Builders*, 121 N.C. App. 671, 675, 468 S.E.2d 510, 512-13, *disc. review allowed*, 343 N.C. 757, 473 S.E.2d 627 (1996). At the time of the Full Commission's ruling in the instant case, there had already been a determination that the employee was disabled—that was the purpose and effect of the Form 21 agreement. Thus, the rule enumerated in *Russell* is inapplicable to an employee entitled to rely on a Form 21 presumption.

The second part of defendant's (and the Commission's) analysis also fails. Defendant's argument is thus: Employee returns to work,

therefore the employee's presumptive right to continued disability payments ends, so defendant has no further obligation to pay—and may cancel the Form 21 disability award without further ado. If this is what defendant and the Commission apprehend Rule 404 and *Russell* to stand for, then they are in error.

The viability of I.C. Rule 404 has been questioned before. In *Martin v. Piedmont Asphalt & Paving Co.*, 113 N.C. App. 121, 124, 437 S.E.2d 696, 698 (1993) (*Martin I*), this Court voided the use of a Form 24 as a means to *administratively* terminate disability awards under I.C. Rule 404; in other words the employee was not afforded an opportunity for a hearing pursuant to §§ 97-83 or 97-84. This Court's decision in *Martin I* was subsequently overruled on procedural grounds by our Supreme Court in *Martin v. Piedmont Asphalt and Paving*, 337 N.C. 785, 788-89, 448 S.E.2d 380, 382 (1994) (*Martin II*) (vacating *Martin I* as, *inter alia*, an advisory opinion). Although *Martin I* has no precedential effect, it is nonetheless instructive.

At the time of the *Martin I* decision, the Commission had established a practice of allowing employers to stop disability payments by filing a Form 24. *Martin I*, 113 N.C. App. at 124, 437 S.E.2d at 698. Once filed, a Commission administrator would "process" the forms by stamping them "approved" or "denied." *Id.* The *Martin* Court held that disability awards could be changed only as provided by statute, *id.* at 125-26, 437 S.E.2d at 699, and disavowed any "administrative [Commission] procedure which allows and condones the termination of compensation by an employer and the employer's insurance carrier by the mere filing of an Industrial Commission form (Form 24) . . . ." *Id.* at 124, 437 S.E.2d at 697-98.

In the instant case, the Commission not only failed to honor the presumption of disability to which plaintiff was due, it also sanctioned the equivalent of an administrative termination, by holding: "Plaintiff returned to work for defendant and the presumption of disability ended. . . . Therefore, plaintiff is not entitled to benefits under either G.S. §97-29 [total incapacity] or G.S. §97-30 [partial incapacity] after 6 January 1993." In this case, defendant decided it owed no more to plaintiff, and cancelled the Commission's Form 21 award. Thus, the Commission's Conclusion of Law No. 1 is tantamount to a holding that an employee's return to work is a *per se* change in disability, allowing an employer to terminate an award. This position is incorrect.

It appears from the instant Commission's opinion, and defendant's arguments, that each has misconstrued the determinative factor underlying disability, which is "post-injury earning *capacity* . . . ." *Tyndall v. Walter Kidde Co.*, 102 N.C. App. 726, 730, 403 S.E.2d 548, 550, *disc. review denied*, 329 N.C. 505, 407 S.E.2d 553 (1991) (emphasis added). "An employee's release to return to work is not the equivalent of a *finding* that the employee is able to earn the same wage earned prior to the injury, nor does it *automatically deprive* an employee of the [Form 21] presumption." *Radica*, 113 N.C. App. at 447, 439 S.E.2d at 190 (emphasis added). For instance, even if an employee returns to work at a pre-injury wage level, this evidence alone may " 'be an unreliable basis for estimating [earning] capacity.' " *Tyndall*, 102 N.C. App. at 730, 403 S.E.2d at 550 (quoting 2 Larson's Workmen's Compensation Law § 57.21(d) at 10-125).

For referential purposes, we also note that our rules of evidence, though not technically binding on the Commission, "impose[] on the party against whom [the presumption] is directed the burden of going forward with *evidence* to rebut or meet the presumption . . . ." N.C. Gen. Stat. § 8C-1, Rule 301 (1992) (emphasis added); and *see Maley v. Thomasville Furniture Co.*, 214 N.C. 589, 594-95, 200 S.E. 438, 441-42 (1939) (Industrial Commission not bound to strict adherence to the Rules of Evidence).

Needless to say, only a duly authorized body may make a "finding," or take "evidence," and in the workers' compensation context, an employer is not such a body. This Court has long recognized that the Industrial Commission is the sole fact finding agency in workers' compensation cases. *Vieregge v. N.C. State University*, 105 N.C. App. 633, 638, 414 S.E.2d 771, 774 (1992). Determinations of disability under N.C. Gen. Stat. § 97-2(9) require application of law to fact, or otherwise put, the making of findings and conclusions of law. *See Radica*, 113 N.C. App. at 446-47, 439 S.E.2d at 189-90; *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982); *West v. J.P. Stevens Co.*, 12 N.C. App. 456, 460, 183 S.E.2d 876, 879 (1971).

Thus, absent a settlement with the employee, an award of temporary total disability cannot be undone without resort to a lawful determination by the Commission that the employee's disability no longer exists—which will require the application of law to fact and, therefore, a hearing. *Radica*, 113 N.C. App. at 446-47, 439 S.E.2d at 189-90

(the Act requires the Commission to make findings when passing on disability issues). N.C. Gen. Stat. § 97-83 is unequivocal about the need for a hearing; it states

> if [the employer and employee] have reached such an agreement [for disability payments] which has been signed and filed with the Commission, and compensation has been paid or is due in accordance therewith, and the parties thereto then disagree as to the continuance of any weekly payment under such agreement, either party may *make application to the Industrial Commission for a hearing in regard to the matters at issue*, and for a ruling thereon.

(Emphasis added.)

Given the requirement of a hearing, it necessarily follows that only the Commission can ascertain whether an employer has presented evidence rebutting a Form 21 presumption of disability. *See Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 209, 472 S.E.2d 382, 388 (1996) (Walker, J., concurring) (discussing ways an employer may rebut the presumption of total disability). Unless the presumption is waived by the employee, no change in disability compensation may occur absent the opportunity for a hearing. *Radica*, 113 N.C. App. at 447-48, 439 S.E.2d at 190; *see also, Martin*, 113 N.C. App. at 124-25, 437 S.E.2d at 699-700. We note that one such way a waiver might occur is when an employee and employer settle their compensation dispute in a manner consistent with N.C. Gen. Stat. § 97-17, and that settlement is subsequently approved by the Commission. N.C. Gen. Stat. § 97-17.

Once (or if) a hearing occurs, the existence of a Form 21 agreement entitles the employee to rely on the "benefit of [the] presumption that she is totally disabled." *Franklin*, 123 N.C. App. at 205, 472 S.E.2d at 386. The employee need not present evidence at the hearing unless and until the employer "claim[ing] that the plaintiff *is* capable of earning wages . . . come[s] forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is *capable* of getting one, taking into account both physical and vocational limitations." *Kennedy v. Duke University Med. Ctr.*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990) (emphasis supplied) (emphasis added). Again, *capacity to earn* is the benchmark test of disability, so mere proof of a return to work is insufficient to rebut the Form 21 presumption. *Radica*, 113 N.C. App. at 447, 439 S.E.2d at 190. Necessarily then, the Commission's conclusion that plaintiff "returned to work for

defendant and the presumption of disability ended . . . [t]herefore, plaintiff is not entitled to benefits . . ." cannot stand.

In summary, the presumption of disability inures to the benefit of an employee whenever a disability award is made by the Commission. *Dalton*, 119 N.C. App. at 282, 283, 458 S.E.2d at 256, 257; *Watkins*, 279 N.C. at 137, 181 S.E.2d at 592. A Form 21 agreement has long been regarded by this Court as "constitut[ing] an award by the Commission, enforceable if necessary, by a court decree." *Watkins*, 279 N.C. at 138, 181 S.E.2d at 593; *Dalton*, 119 N.C. App. at 282, 458 S.E.2d at 256; *see also* N.C. Gen. Stat. § 97-82. Such an award is "conclusive and binding as to all questions of fact." N.C. Gen. Stat. § 97-86 (1991). Challenges to an award must thereafter be made pursuant to the processes mandated by the Act.

In this case, defendant made its own determination that a change of condition had occurred, to wit, that plaintiff had returned to work; therefore defendant's obligation to continue disability payments had ceased. Given the precedent directly contradicting this proposition, we remand the issue of plaintiff's disability compensation for rehearing to the Full Commission.

## II. Credit for Temporary Total Disability Payments

[2] The Commission's failure to properly apply the presumption of total disability in favor of plaintiff eviscerates its conclusions regarding a credit for monies paid by the employer for "temporary total disability." As we stated above, plaintiff was presumptively due payments for total disability pursuant to the Form 21 agreement up and until the date of a contrary determination by the Commission. In the instant award, the Commission concluded (in Conclusion of Law No. 2) that defendant was due a credit for "all temporary partial disability benefits paid to plaintiff after 6 January 1993."

Apparently, the Commission made this determination based on its Conclusion of Law No. 1. Conclusion of Law No. 1 states that "plaintiff is not entitled to benefits under either G.S. § 97-29 [temporary total disability] or G.S. § 97-30 [temporary partial disability] after 6 January 1993." This proposition is untenable since plaintiff was presumptively due payments for total temporary disability until the Commission held otherwise.

Credits by the Commission for payments made by an employer should be given only if they "were not due and payable when made." N.C. Gen. Stat. § 97-42 (1991 & 1994 Cum. Supp.). Given the

Commission's failure to apply the Form 21 presumption in this case, it was improper for a credit to have been entered. We do not mean to imply that defendant will or will not qualify for a credit once the issues are reheard, only that at this stage of the proceedings no credit should have been given.

### III. Penalties

[3] The Full Commission determined that "no basis" existed upon which to assess a penalty against defendant in its Conclusion of Law No. 5. This is also incorrect. N.C. Gen. Stat. § 97-18(e) states: "If any installment of compensation . . . is not paid within 14 days after it becomes due . . . there shall be added to such unpaid installment[s] an amount equal to ten per centum (10%) thereof . . . unless such non-payment is excused by the Commission after a showing by the employer that owing to conditions over which he had no control such installment[s] could not be paid within the period prescribed for the payment."

In this case, defendant voluntarily ceased making payments without the permission of the Commission. On its own, defendant decided it was entitled to completely cease temporary total disability payments to plaintiff. Then defendant decided, again on its own, to resume payments at a level it deemed proper. Even assuming defendant was confused as to the incongruities between I.C. Rule 404 and the existing case law on compensation termination, this does not provide defendant with an excuse. Rule 404(2) itself allows that "[w]hen an employer . . . seeks to terminate or suspend compensation being paid pursuant to N.C. Gen. Stat. § 97-29 . . . the employer or carrier/administrator shall notify the employee and the employee's attorney of record, if any, on a Form 24 rev., Application to Stop Payment of Compensation." No such "Form 24 rev." appears in the record, and the Commission's opinion and award does not mention any receipt of same. Defendant's actions cannot be countenanced, as this is the exact behavior N.C. Gen. Stat. § 97-18 was enacted to prevent. *Foster v. Western-Electric Co.*, 320 N.C. 113, 116, 357 S.E.2d 670, 673 (1987) (prompt payment of compensation required).

For the foregoing reasons, we reverse and remand to the Commission for proceedings in accord with this opinion.

Reversed and Remanded.

Chief Judge ARNOLD and Judge MARTIN, John C., concur.