Upon review of the competent evidence of record with respect to the errors assigned, the Full Commission finds good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing on 29 January 1998 as:
 STIPULATIONS
1. Plaintiff-employee is Lou Nell Shaver.
2. Defendant-employer is Hunt Manufacturing Company.
3. Liberty Mutual Insurance Company was the carrier on the risk at all relevant times herein.
4. At all relevant times herein, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act.
5. An employer-employee relationship existed between defendant-employer and plaintiff-employee on or about 30 January 1995, the date of the alleged injury which is the subject of this claim.
6. An Industrial Commission Form 21 Agreement for Compensation was executed by the parties and approved by the Commission on 25 January 1995. Under the terms of this agreement, plaintiff was paid temporary total disability compensation from 16 February 1995 to 21 February 1995.
7. Plaintiff's average weekly wage on 30 January 1995 was $363.20, yielding a compensation rate of $242.15.
***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on 21 June 1934. On 8 October 1990, plaintiff began employment with defendant-employer, a manufacturer of arts and crafts supplies. During this employment, plaintiff performed various duties, including working on the paint line, lifting pans of parts, performing assembly line work, and packing products in boxes.
2. In March 1992, plaintiff sustained a low back strain after lifting boxes at work. This injury was the subject of I.C. File No. 243585. For this injury, plaintiff underwent an MRI on 9 April 1992, which revealed a minimal annular type disc bulging at the L4-L5 level. Prior to this time, plaintiff had never experienced a back injury. As the result of her back injury in March 1992, plaintiff was unable to work for ten days.
3. On 30 January 1995, plaintiff sustained another injury by accident resulting in low back pain. Defendants accepted the compensability of this incident through an Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission on 25 January 1996. Under the terms of this agreement, plaintiff was paid temporary total disability compensation from 16 February 1995 to 21 February 1995.
4. On 8 February 1995, plaintiff was examined by Dr. Robert Saltzman for low back pain. Dr. Saltzman diagnosed plaintiff as having facet arthritis, a degenerative process, at L5-S1 bilaterally. Dr. Saltzman initially removed plaintiff from work for one week. On 13 February 1995, Dr. Saltzman again examined plaintiff and determined that physical therapy was appropriate. Dr. Saltzman again ordered plaintiff to remain out of work.
5. On 20 February 1995, having completed the Medrol dose-pack medication and having begun physical therapy, Dr. Saltzman released plaintiff to return to light duty work with restrictions of avoiding lifting, bending and stooping.
6. Plaintiff did not return to see Dr. Saltzman for complaints of back pain until 30 May 1996.
7. On 21 February 1995, plaintiff returned to work for defendant-employer earning the same wages she had earned prior to her 30 January 1995 injury by accident.
8. On 30 May 1996, plaintiff returned to Dr. Saltzman with complaints of back problems that began after she had slipped in her bathtub the prior week. Dr. Saltzman noted that plaintiff was experiencing pain across her lower back and into both legs. Dr. Saltzman prescribed medication, and recommended physical therapy and removed plaintiff from work for one week.
9. Dr. Saltzman next saw plaintiff on 6 June 1996, noting that she had begun physical therapy. Dr. Saltzman also opined that plaintiff remained unable to return to work and that she would require therapy for at least two more weeks. Plaintiff's removal from work was continued through 24 June 1996.
10. On 24 June 1996, Dr. Saltzman noted that plaintiff had continued low back pain extending into her left buttock and groin, and that physical therapy had resulted in only minimal relief. In order to identify the degree of osteoarthritis, spondylosis, impingement and possible disc disease and spinal stenosis, Dr. Saltzman ordered a CT scan.
11. On 26 June 1996, plaintiff underwent a CT scan which revealed a large, broad based disc herniation at L4-5, central spinal stenosis, and a small lateral disc herniation at L5-S1. Dr. Saltzman changed plaintiff's medications and ordered plaintiff to remain out of work for an additional month.
12. Plaintiff's back condition continued to deteriorate. On 23 December 1996, plaintiff returned to Dr. Saltzman with complaints of pain in her lower back, thighs, and calves. This pain was the result of spinal stenosis that had continued to worsen and was further aggravated by the slip in the bathtub.
13. Because of plaintiff's age and weight, Dr. Saltzman did not believe that she was a good candidate for surgery. Dr. Saltzman opined that plaintiff's condition would continue to deteriorate due to normal living activities and the aging process.
14. The greater weight of the evidence, in particular the medical evidence, fails to establish that plaintiff's back complaints after 30 May 1996 and her incapacity to earn wages after that date were caused by the injury by accident on 30 January 1995 or by an earlier injury by accident in March 1992.
15. Plaintiff did not return to work for defendant-employer or any other employer after 30 May 1996.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's disability after 30 May 1996 was not caused by her injury by accident on 30 January 1995, or by an earlier injury by accident in March 1992. G.S. 97-29; Kisiah v. W.R.Kisiah Plumbing, Inc., 124 N.C. App. 72, 476 S.E.2d 434 (1996),disc. rev. denied, 345 N.C. 343, 483 S.E.2d 169 (1997).
2. Plaintiff is not entitled to further total disability benefits under the Act. G.S. 97-29.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Under the law, plaintiff's claim for benefits after 21 February 1995, in particular after 30 January 1995, must be and hereby is DENIED.
2. Each side shall pays its own costs, except that defendants shall pay for the cost of Dr. Saltzman's deposition, if not previously paid.
This the 30th day of August 1999.
 S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ LAURA K. MAVRETIC COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER