The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Mary Moore Hoag and the assignments of error on appeal. Neither party has shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner. However, pursuant to its authority under G.S. 97-85, the Full Commission has modified the Deputy Commissioners decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 20 May 1999 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between the parties at all relevant times.
3. Granite State Insurance Company, through AIG Claim Services, is the carrier on the risk.
4. Plaintiffs average weekly wage at all relevant times was $253.33, yielding a compensation rate of $168.89 per week.
5. Plaintiff sustained a compensable injury by accident to her back on 10 March 1998. Plaintiff received temporary total disability benefits at a rate of $144.58 per week from 11 March 1998 through 14 April 1998. Plaintiff returned to work for defendant-employer earning the same or greater wages than she had earned before her injury on 15 May 1998.
6. The following medical records were stipulated into evidence:
a) Records from Dr. Vincent Paul;
b) Dr. Herrick;
7. Industrial Commission Form Nos. 60, 18, 19, 33 and 33R were stipulated into evidence.
8. The issues to be resolved are:
 a. As a result of plaintiffs compensable injury, is she entitled to additional temporary total disability compensation?
b. Is plaintiff entitled to permanent partial disability compensation?
c. To what medical benefits is plaintiff entitled?
 ***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner on 20 May 1999, plaintiff was thirty-four (34) years old with a GED. She is a certified nursing assistant ("CNA).
2. On 7 February 1998, plaintiff began working as a CNA for defendant-employer. Plaintiffs job duties included assisting residents with personal care needs, taking vital signs of residents, administering medication as directed, and cleaning and assisting as necessary. Plaintiff was hired on a "as needed basis, working various hours per week at $6.00 per hour.
3. Shortly after plaintiff began working for defendant-employer, she became hysterical, nervous and upset when asked to take the vital signs of a patient who had fainted. The facility administrator, Ms. Deborah Britt, discussed this incident with plaintiff.
4. On 10 March 1998, plaintiff fell on her coccyx while assisting a patient who was taking a shower. Plaintiff notified her supervisor of her injury. Plaintiffs claim was accepted as compensable and she was paid temporary total disability benefits at a rate of $144.50 per week from 11 March 1998 through 14 April 1998.
5. Plaintiff also received compensation for medical treatment. She was initially treated at High Point Emergency Room where x-rays of the lumbosacral region were taken and read as normal. Plaintiff was diagnosed with a lower back strain. She did not immediately return to work.
6. On 24 March 1998, plaintiff was examined by Dr. Wayne Herrick, an orthopedic surgeon. Dr. Herrick found no neurological evidence of a nerve injury. Dr. Herrick also ordered a bone scan of the lumbosacral spine and coccyx on 9 April 1998, the results of which were normal. However, Dr. Herrick did remove plaintiff from work.
7. Plaintiffs last visit to Dr. Herrick was on 20 April 1998. Dr. Herricks final diagnosis was a sacroiliac sprain, to be treated conservatively without surgery. No further diagnostic studies were deemed necessary.
8. Dr. Herrick released plaintiff on 20 April 1998 to return to work without restrictions. Plaintiff was capable of returning to her normal job duties with defendant-employer on a full-time basis as of 27 April 1998.
9. Plaintiff did not immediately return to work after being released. She was contacted by Administrator Deborah Britt. Plaintiff failed to attend a meeting to discuss returning to her former position with defendant-employer. Following receipt of a letter from Ms. Britt, plaintiff contacted Ms. Britt and returned to work on 15 May 1998, earning the same wages she had earned at the time of her accident.
10. Plaintiff performed her normal job duties as a CNA, without restrictions or physical difficulty and did not request any additional medical care subsequent to 15 May 1998.
11. On 12 July 1998, plaintiff once again became hysterical when a resident fainted. Plaintiff failed to follow the directions of her supervisor, Ms. Millie Hale, and did not assist the patient as required by her job duties. Although both Ms. Hale and Ms. Britt attempted to speak with plaintiff following the incident, plaintiff remained agitated and was terminated. The testimony of Ms. Hale and Ms. Britt regarding the circumstances of plaintiffs termination is accepted as credible.
12. Plaintiffs termination was for misconduct or fault for which a non-disabled employee would have been terminated and constituted a constructive refusal to perform her work.
13. In August 1998 plaintiff began working for Westwood Health and Rehabilitation ("Westwood) as a CNA, earning greater wages than she earned at the time of her 10 March 1998 injury by accident. Plaintiff continued to work in this capacity through the date of the hearing before the Deputy Commissioner on 20 May 1999.
14. Returning to work for defendant-employer earning the same or greater wages as she had earned at the time of the accident is an indication of plaintiffs ability to earn wages. Likewise her ability to work was also exhibited when she found employment at Westwood earning greater wages than she had earned at the time of her injury.
15. Plaintiff failed to prove that any disability she experienced subsequent to 12 July 1998 is related to her 10 March 1998 injury by accident.
16. Plaintiff did not seek further medical care until after her termination by defendant-employer and her hiring by Westwood. On 28 August 1998, upon referral by her former attorney, plaintiff was evaluated by Dr. Vincent E. Paul. Dr. Paul diagnosed coccygodynia, for which he recommended conservative care.
17. Plaintiff also exhibited Waddell symptoms indicating subjective low back pain in excess of the objective findings. Dr. Paul agreed that plaintiff could continue working her full-time job as a CNA without restrictions and did not remove her from work.
18. Dr. Paul assigned plaintiff a five percent (5%) % permanent partial disability rating to her back.
19. Dr. Paul also suggested that plaintiff undergo a bone scan of her lower back to rule out nerve root or other problems which could cause pain. The bone scan was negative, ruling out additional problems.
20. Although both Dr. Herrick and Dr. Paul found that plaintiff could work without restriction, at some time in late 1998 or early 1999, plaintiff unilaterally decreased her work hours to approximately twenty-four (24) hours per week. Plaintiffs testimony that her decision to work fewer hours was related to her injury is not accepted as credible. At the time of the hearing before the Deputy Commissioner on 20 May 1998, plaintiff was capable of working her normal job duties as a CNA without restriction and capable of earning the same or greater wages than she had earned at the time of her 10 March 1998 injury by accident injury.
21. In February 1999, plaintiff was evaluated by Dr. Rosenbaum, who diagnosed coccydynia with a mild sacroiliac sprain. Dr. Rosenbaum suggested the possibility of an evaluation at a pain management clinic. Neither Dr. Herrick, who treated plaintiff immediately following the work accident, nor Dr. Paul, who saw plaintiff in August 1998, made such a recommendation. Dr. Rosenbaums recommendation was based upon plaintiffs subjective complaints of pain. As such, the recommendation is not accepted as medically necessary in order to reduce her pain, or give relief.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 10 March 1998, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. G.S. 97-2(6). As a result of this injury by accident, plaintiff sustained an injury to her coccyx and low back. Id.
2. As the result of her 10 March 1998 injury by accident, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $168.89 per week for the period of 11 March 1998 through 26 April 1998. G.S. 97-29. This compensation is subject to a credit for any temporary total disability compensation previously paid to plaintiff. Id.
3. Defendants accepted the compensability of plaintiffs claim by entering into the Industrial Commission Form 60, which created a rebuttable presumption of continued disability in plaintiff favor. G.S. 97-29; Kisiah v. W.R. Kisiah Plumbing Co., Inc.,124 N.C. App. 72, 476 S.E.2d 434 (1996), disc. rev. denied,345 N.C. 343, 483 S.E.2d 169 (1997). Defendants rebutted the presumption of continued disability by showing that plaintiff returned to work at the same or greater wages she had earned prior to her injury by accident. Id.
4. Plaintiffs termination on 12 July 1998 was unrelated to her compensable injury and was due to misconduct or fault for which a non-disabled employee would have been terminated. Seagreaves v.Austin Co. of Greensboro, 123 N.C. App. 228, 473 S.E.2d 397
(1996). Such misconduct constitutes a constructive refusal of suitable work and results in a forfeiture of benefits. G.S. 97-32. Plaintiff has failed to prove that any diminished wage-earning capacity or disability thereafter is due to her injury by accident. Seagreaves v. Austin Co. of Greensboro,123 N.C. App. 228, 473 S.E.2d 397 (1996).
5. As the result of her 10 March 1998 injury by accident, plaintiff is entitled to be paid by defendants permanent partial disability compensation at the rate of $168.89 per week for a period of fifteen weeks (15) for the five percent (5%) rating to her back. G.S. 97-31(23).
6. In a case of controversy arising between an employer and employee regarding the need for additional medical care, the Industrial Commission may order further treatment as may, in the discretion of the Commission, be necessary. G.S. 97-25. Plaintiffs bone scan was reasonable and necessary to rule out certain causes of pain. Id. However, further treatment of plaintiffs low back and coccyx, including pain management evaluation, is not reasonably necessary and plaintiffs claim for additional medical treatment is hereby denied. Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the Deputy Commissioners holding and enters the following:
 AWARD
1. Subject to a credit for any temporary total disability compensation previously paid, defendants shall pay to plaintiff temporary total disability compensation at the rate of $168.89 per week for the period of 11 March 1998 through 26 April 1998. Having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorneys fee approved herein.
2. Defendants shall pay to plaintiff permanent partial disability compensation at the rate of $168.89 per week for a period of fifteen weeks (15) for the five percent (5%) rating to her back. Having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorneys fee approved herein.
3. Defendants shall pay for related medical expenses incurred as the result of plaintiffs 10 March 1998 injury by accident, including costs associated with the bone scan ordered by Dr. Paul.
4. A reasonable attorneys fee in the amount of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. This fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff.
5. Defendants shall bear the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER